# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| Curtis Snodgrass<br>1813 Geneva Hills Drive<br>Grove City, Ohio 43123 | * <br> <br> * | <br> <br>Case No. 2:17-cv-147 |
| Plaintiff, | * | Judge |
| v. | * | Magistrate Judge |
| Columbus Ohio Preservation<br>Services, LLC<br>4826 Hendron Road<br>Groveport, Ohio 43215 | *<br><br>*<br><br>* | **JURY DEMAND ENDORSED HEREON** |
| Defendant. | * | |

## COMPLAINT

Plaintiff Curtis Snodgrass (hereinafter "Plaintiff"), for his Complaint against Defendant Columbus Ohio Preservation Services, LLC (hereinafter "Defendant"), hereby alleges as follows:

### I. JURISDICTION AND VENUE

1. This action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.*, the Ohio Minimum Fair Wage Standards Act, O.R.C. Chapter 4111 ("the Ohio Wage Act"), the Ohio Prompt Pay Act, O.R.C. § 4113.15 ("OPPA"), O.R.C. 4123.90, and 28 U.S.C. §1331.

2. This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. §1367 as this Complaint raises additional claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction.

3. Venue is proper in this forum pursuant to 28 U.S.C. §1391, because Plaintiff entered into an employment relationship with Defendant in the Southern District of Ohio and Defendant has done substantial business in the Southern District of Ohio and has its headquarters in the Southern District of Ohio.

**II.  PARTIES**

4. Plaintiff, Curtis Snodgrass, is an individual, a United States Citizen, and a resident of the State of Ohio.

5. At all times relevant herein, Plaintiff was an employee of Defendant as defined in the FLSA, the Ohio Wage Act, and Ohio Constitution Art. 2 §34a.

6. At all times relevant herein, Plaintiff was a covered, non-exempt employee of Defendant who, pursuant to Section 7 of the FLSA, was required to receive not less than one and one-half times his regular rate of pay for hours worked in excess of forty (40) hours.

7. Defendant is a domestic for-profit limited liability company with its principal place of business in the Southern District of Ohio. Defendant operates a construction and building company providing a wide variety of construction services in and around the Columbus metropolitan area.

8. At all times relevant herein, Defendant was an "employer" as that term is defined in the FLSA, the Ohio Wage Act, and Ohio Constitution Art. 2 §34a.

9. Defendant conducts substantial business in the Southern District of Ohio and has its headquarters in Franklin County, Ohio.

10. Upon information and belief, Defendant, at all times relevant hereto, was fully aware of the fact that they are legally required to comply with the wage and overtime payment

laws of the United States and of the State of Ohio, as well as record keeping laws of the State of Ohio.

11. During relevant times, Defendant had knowledge of and acted willfully in regard to the conduct described herein.

12. Defendant is in possession and control of necessary documents and information from which Plaintiff would be able to precisely calculate damages and/or did not properly maintain such records.

### III. FACTUAL BACKGROUND

13. Defendant hired Plaintiff in 2012 as a full-time construction worker and/or manual laborer for Defendant's construction business. Since his hire, Plaintiff regularly worked at least forty (40) hour workweeks for Defendant.

14. During his employment, Plaintiff met or exceeded his supervisor's expectations.

#### A. Unpaid Overtime

15. During Plaintiff's employment, Defendant contracted to perform construction on projects in and around the Columbus metropolitan area, throughout the State of Ohio, and in the surrounding states.

16. Consequently, on a daily basis Plaintiff was required to spend significant amounts of time traveling from and returning to Defendant's home office located at 4826 Hendron Rd., Groveport, Ohio 43125 ("Groveport Office") from work sites in various Ohio cities, Ohio counties, and other states to perform his duties for Defendant.

17. During this period, Plaintiff regularly worked in excess of forty (40) hours per workweek, but he was not paid at 1.5 times his regular rate for all hours worked over forty (40) in a workweek.

18. Defendant did not maintain a customary timekeeping system or method to accurately track Plaintiff's and other employees' hours worked to ensure they were paid properly. Instead, Defendant manually recorded the hours worked by Plaintiff and paid him based upon its recorded hours. However, Defendant failed to properly account for and pay Plaintiff for all hours worked.

19. Because Plaintiff's time was tracked and recorded solely by Defendant, early in his employment Plaintiff tracked his own hours worked for a few workweeks to determine whether he was being paid properly. Plaintiff discovered that Defendant did not pay him for all hours worked during those pay periods.

20. Plaintiff learned that Defendant did not compensate Plaintiff and other hourly employees for all of their time spent traveling to and from various job sites in and around the Columbus metropolitan area and beyond. In particular, Defendant did not pay Plaintiff for time spent traveling back from job sites outside the Interstate 270 beltway freeway ("I-270") when Plaintiff was returning to Defendant's Groveport Office, even though Plaintiff regularly worked at construction sites outside I-270.

21. Plaintiff started each workday by reporting to Defendant's Groveport Office to prepare for the day's work and to receive his job assignment. Plaintiff also learned that Defendant did not start paying Plaintiff and other hourly workers each morning when they reported to the Groveport Office and began working for the day at or before their designated "start time", but instead only started paying them fifteen (15) minutes *after* their given "start time".

22. Plaintiff's start time varied each day, but he and other hourly employees arrived at the Groveport Office no later than their designated start time, and typically before such time,

each day because they were required to participate in a daily meeting to find out their work assignments.

23. At or before the designated start time, Defendant called Plaintiff and other hourly employees into the office to meet with a supervisor about their daily project assignment(s). During this meeting, Defendant gave Plaintiff his daily schedule which included a list of the materials needed for the day's project(s). Defendant also gave Plaintiff a money bag with funds to purchase any necessary supplies.

24. After receiving his schedule, Plaintiff went to Defendant's materials storage shop and gathered the materials/supplies needed for the day.

25. Plaintiff then loaded and prepared Defendant's truck with the necessary supplies and materials for that day's project before leaving the Groveport Office. If Defendant did not have certain necessary materials in its storage shop, Plaintiff traveled to a store to purchase the needed materials and supplies after leaving the Groveport Office for the day.

26. However, because Defendant did not record Plaintiff and other hourly employees as "on the clock" until fifteen (15) minutes *after* their designated start time, even though Plaintiff began working no later than his daily start time and frequently began working before that time, Defendant did not pay Plaintiff for all of his time spent meeting with his supervisors to get his daily schedule, preparing Defendant's truck, and gathering work materials at their Groveport Office before leaving each morning.

27. Once Defendant recorded Plaintiff and other hourly employees as on the clock fifteen (15) minutes after their daily start time, they remained on the clock throughout the work day until they completed their final project for the day.

28. At that point, Plaintiff was always required to return to Defendant's Groveport Office. However, whether he was paid for his travel back to the Groveport Office was dependent upon where he was returning from.

29. If the last work site was within the I-270 beltway, Plaintiff was compensated for the travel back to the Groveport Office. But if the last work site was *outside* of the I-270 beltway, he was not compensated for the travel back to the Groveport Office. Under either scenario, Plaintiff was required to return Defendant's truck and equipment belonging to Defendant to the shift supervisor at Defendant's Groveport Office and sign out before leaving each day. The supervisor would record the time Plaintiff arrived back at the Groveport Office as the end of his work shift.

30. But, Defendant then deducted or reduced Plaintiff's compensable hours worked by the time spent traveling from the job site back to the Groveport Office if outside I-270, and Plaintiff was not paid for these hours worked. Plaintiff also traveled throughout the State of Ohio to cities several hours away, and on occasions traveled to other states such as Indiana and West Virginia. Defendant also did not pay Plaintiff for all time spent traveling back from these projects to Defendant's Groveport Office.

31. Additionally, upon arriving back at the Groveport Office and after Defendant recorded Plaintiff's daily shift had ended, Plaintiff had to return Defendant's money bag with all materials purchase receipts from the day and any remaining money to the supervisor. Plaintiff then had to reconcile his purchases and receipts with Defendant's remaining funds before he could leave the Groveport Office for the day.

32. Whenever Plaintiff raised any issues regarding his pay to his supervisor, Randy Lavender ("Mr. Lavender"), and questioned whether Defendant paid Plaintiff for all hours worked, Mr. Lavender expressed dissatisfaction and/or hostility towards Plaintiff.

33. Due to Defendant's unlawful pay practices, including the failure to fully and properly compensate Plaintiff for time spent: (1) working beginning at the designated "start time" but before he was considered "on the clock" which was fifteen (15) minutes after his start time; (2) traveling from the last worksite to the Groveport Office when outside the I-270 beltway; and (3) returning Defendant's unused funds and reconciling his purchase receipts after Defendant recorded him as off the clock, Plaintiff was not paid at 1.5 times his regular rate for all hours worked over forty (40).

**b. Workplace Injury Retaliation**

34. On or around October 4, 2016, Plaintiff was injured while working for Defendant in the performance of his job duties.

35. On that day, Plaintiff and his supervisor, Robert Winchell ("Mr. Winchell"), were purchasing materials needed for that day's construction project(s) in Chillicothe, Ohio. While Plaintiff was lifting and/or moving wood boards, he felt a sharp and sudden pain in his back.

36. Due to his back injury, Plaintiff did not perform any manual labor that day but instead drove Mr. Winchell to various job sites so that he could perform the work needed for the day.

37. On October 6, 2016, Plaintiff went to the hospital to receive treatment for his injuries.

38. Plaintiff was diagnosed with a back strain and was treated for muscle spasms.

39. Plaintiff returned to work on October 10, 2016.

40. On that date, Defendant advised Plaintiff that his workers' compensation claim was going to be denied because he did not inform them of his intention to file a claim.

41. John McPommell ("Mr. McPommell"), Defendant's Owner, instructed Plaintiff to write down on a piece of paper what had occurred when he was injured.

42. Plaintiff complied with this instruction, but Mr. McPommell did not give Plaintiff a copy of his injury statement.

43. Shortly after Plaintiff returned to work, Mr. Lavender discussed Plaintiff's workplace injury with another employee of Defendants, Lorenza Thomas ("Mr. Thomas").

44. Mr. Lavender told Mr. Thomas that he was "not happy" that Plaintiff had filed a workers' compensation claim and that he had been "blindsided" by the claim.

45. On another occasion, Plaintiff and Mr. Thomas were returning to the Groveport Office after finishing for the day when Mr. Thomas called Mr. Lavender on the phone.

46. Because Plaintiff and Mr. Thomas were both riding in the same truck and sitting close to one another, Plaintiff could hear the conversation between Mr. Thomas Mr. Lavender.

47. When Mr. Lavender learned that Plaintiff was in the truck being driven by Mr. Thomas, Mr. Lavender told Mr. Thomas to run his truck "into the river and make sure he [Plaintiff] doesn't make it out."

48. On or around October 26, 2016, Defendant appealed Plaintiff's workers' compensation claim.

49. On November 2, 2016, Defendant terminated Plaintiff's employment.

**IV. CAUSES OF ACTION**

<u>**FIRST CAUSE OF ACTION**</u>
**FLSA –UNPAID OVERTIME**

50. All of the preceding paragraphs are realleged as if fully rewritten herein. This claim is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*.

51. The FLSA requires that employees receive overtime compensation for hours worked in excess of forty (40) per week. 29 U.S.C. § 207(a)(1).

52. The FLSA requires that covered employees be compensated for every hour worked in a workweek. See 29 U.S.C. § 206(b).

53. The FLSA requires that covered employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in a workweek. See 29 U.S.C. § 207(a)(1).

54. Plaintiff was a covered employee entitled to the FLSA's protections.

55. Defendant is a covered employer required to comply with the FLSA's mandates.

56. Defendant violated the FLSA with respect to Plaintiff by failing to pay Plaintiff at the rate of one and one half times his regular rate of pay for all hours worked in excess of 40 hours in a workweek.

57. Defendant employed Plaintiff as construction worker and/or manual laborer from 2012 until November 2, 2016.

58. Plaintiff was a non-exempt, hourly employee at all times throughout his employment.

59. Defendant refused and failed to pay Plaintiff the overtime premium required by the FLSA for certain hours worked throughout his employment.

60. Plaintiff routinely worked in excess of forty (40) hours per week.

61. Plaintiff should have been paid the overtime premium for hours worked in excess of forty (40) hours per week.

62. Defendant knew or should have known of the overtime payment requirement of the FLSA.

63. Plaintiff's classification as a non-exempt, hourly employee throughout his employment demonstrates Defendant knew or should have known they were required to pay Plaintiff overtime compensation for all hours worked in excess of forty (40) hours per week.

64. Throughout his employment for Defendant, Defendant has knowingly and willfully failed to pay Plaintiff all overtime wages he was due.

65. The job duties Plaintiff had in the years preceding the filing date of this Complaint did not exempt him from the overtime pay requirements, or any other requirement of the FLSA.

66. The exact total amount of compensation, including overtime compensation, that Defendant has failed to pay Plaintiff is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendant or were not kept by Defendant.

67. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer damages in an amount not presently ascertainable. In addition, Plaintiff seeks liquidated damages, interest and attorneys' fees, and all other remedies available, as result of Defendant's willful failure and refusal to pay overtime wages in violations of Sections 6 and 7 of the Act (29 U.S.C. §§206-207).

**SECOND CAUSE OF ACTION**
**R.C. 4111.03 – UNPAID OVERTIME**

68. All of the preceding paragraphs are realleged as if fully rewritten herein

69. This claim is brought under Ohio Law.

70. The Ohio Wage Act requires that covered employees be compensated for every hour worked in a workweek. See O.R.C. §§ 4111 et seq., See also, 29 U.S.C §206(b)

71. The Ohio Wage Act requires that employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in one workweek, "in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the "Fair Labor Standards Act of 1938. See O.R. C. § 4111.03 (A), See also, 29 U.S.C. § 207 (a)(1)

72. Plaintiff was a covered employee entitled to the Ohio Wage Act's protections

73. Plaintiff was not exempt from receiving Ohio Wage Act overtime benefits because he was not an exempt "executive," "administrative," or "professional" employee, as those terms are defined under the FLSA. See O.R.C. 4111.03(A), See also 29 C.F.R. §§ 541.0, et seq.

74. Plaintiff was not exempt from receiving FLSA overtime benefits because, *inter alia*, he was not a "learned professional" employee, as that term is defined under the FLSA. See 29 CFR §541.301

75. Defendant is a covered employer required to comply with the Ohio Wage Act's mandates.

76. Defendant violated the Ohio Wage Act with respect to Plaintiff by failing to compensate him at the rate of one and one-half times his regular rate of pay for all hours worked in excess of 40 hours in a workweek

77. In violating the Ohio Wage Act, Defendant acted willfully and with reckless disregard of clearly applicable Ohio Wage Act provisions.

78. For Defendant's violations of the Ohio Wage Act, Plaintiff has suffered damages, Plaintiff seeks unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other remedies available.

## THIRD CAUSE OF ACTION
### R.C. 4113.15 —OPPA VIOLATION

79. All of the preceding paragraphs are realleged as if fully rewritten herein.

80. During relevant times, Defendant was covered by the OPPA and Plaintiff has been employed by Defendant within the meaning of the OPPA.

81. The OPPA requires Defendant to pay Plaintiff all wages, including unpaid overtime, on or before the first day of each month, for wages earned by him during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned by him during the last half of the preceding calendar month. *See* O.R.C. § 4113.15(A).

82. During relevant times, Plaintiff was not paid all wages, including overtime wages at one and one-half times his regular rate within thirty (30) days of performing the work. *See* O.R.C. § 4113.15(B).

83. Plaintiff's unpaid wages remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

84. In violating the OPPA, Defendant acted willfully, without a good faith basis and with reckless disregard of clearly applicable Ohio law, and its actions entitle Plaintiff to liquidated damages in the amount of six percent of the amount of the unpaid overtime compensation owed or two hundred dollars, whichever is greater.

## FOURTH CAUSE OF ACTION
### RECORDKEEPING VIOLATIONS OF THE OHIO WAGE ACT

85. All of the preceding paragraphs are realleged as if fully rewritten herein.

86. The Ohio Wage Act requires employers to maintain and preserve payroll or other records containing, among other things, the hours worked each workday and the total hours worked each workweek. *See* O.R.C. § 4111.08. *See also*, 29 C.F.R. §§ 516.2 *et seq*.

87. During all times material to this complaint, Defendant was a covered employer, and required to comply with the Ohio Wage Act's mandates.

88. Plaintiff was a covered employee entitled to the protection of the Ohio Wage Act.

89. During times material to this complaint, Defendant violated the Ohio Wage Act with respect to Plaintiff by failing to properly maintain accurate records of all hours Plaintiff worked each workday and within each workweek.

90. In violating the Ohio Wage Act, Defendant acted willfully and with reckless disregard of clearly applicable Ohio Wage Act provisions.

## FIFTH CAUSE OF ACTION
## WORKERS' COMPENSATION RETALIATION – R.C. 4123.90

91. Plaintiff restates the allegations contained in the preceding paragraphs as if fully rewritten herein.

92. Plaintiff was injured and/or suffered an occupational injury during the course of his employment with Defendant.

93. After he injured his back lifting and/or moving construction materials while on the job, Plaintiff sought medical attention and filed a claim, instituted, or pursued a claim under the workers' compensation act.

94. Less than one (1) month after Plaintiff filed for workers' compensation benefits, Defendant discharged Plaintiff in violation of O.R.C. 4123.90.

95. Within the ninety (90) days following Plaintiff's discharge, Defendant received written notice that Plaintiff's discharge was in violation of O.R.C. 4123.90.

96. As a result of Defendant's violation of O.R.C. 4123.90, Plaintiff is entitled to all relief afforded under O.R.C. 4123.90, including but not limited to reinstatement with back pay, and/or lost wages, and reasonable attorney's fees and costs.

### SIXTH CAUSE OF ACTION
### WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY– R.C. 4123.90

97. Plaintiff restates the allegations contained in the preceding paragraphs as if fully rewritten herein.

98. A clear public policy exists and is manifested in O.R.C. 4123.90 prohibiting retaliatory employment action against an employee who is injured on the job and files a claim or pursues workers' compensation benefits.

99. Terminating employees under circumstances like those involved in this case would jeopardize the public policy.

100. Plaintiff's dismissal was motivated by conducted related to the public policy in O.R.C. 4123.90.

101. Defendant lacked an overriding legitimate business justification for Plaintiff's termination.

102. As a result of Defendant's violation of O.R.C. 4123.90, Plaintiff is entitled to all relief afforded under O.R.C. 4123.90, including but not limited to reinstatement with back pay, and/or lost wages, and reasonable attorney's fees and costs.

### V. PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests judgment against the Defendant for an Order:

A. Finding that Defendant has failed to keep accurate records in accordance with the FLSA and Ohio law, Plaintiff is entitled to prove his hours worked with reasonable estimates;

B. Awarding Plaintiff unpaid compensation, including overtime wages as to be determined at trial together with any liquidated damages allowed by the FLSA;

C. Awarding Plaintiff unpaid compensation, including overtime wages as to be determined at trial together with any liquidated damages allowed by Ohio Law;

D. Awarding Plaintiff costs and disbursements and reasonable allowances for fees of counsel and experts, and reimbursement of expenses;

E. Awarding Plaintiff such other and further relief as the Court deems just and proper;

F. Issuing an injunction prohibiting Defendant from engaging in present, ongoing and future violations of the FLSA and Ohio Law;

G. Awarding back pay and benefits, front pay and benefits, and any other relief provided in O.R.C. 4123.90 in an amount to be determined at trial;

H. Awarding compensatory damages, liquidated damages, punitive damages, emotional distress damages, pre-judgment interest, and post-judgment interest;

I. Granting Plaintiff leave to amend to file additional claims for relief or different causes of action should information become available through investigation and discovery; and

J. Rendering a judgment against Defendant for all damage, relief, or any other recovery whatsoever.

    Respectfully submitted,

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman (0085586)
**COFFMAN LEGAL, LLC**
1457 S. High St.

Columbus, Ohio 43207
Phone: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com

Peter Contreras (0087530)
**CONTRERAS LAW, LLC**
PO Box 215
Amlin, Ohio 43002
Phone: 614-787-4878
Fax: 614-923-7369
Email: peter.contreras@contrerasfirm.com
*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff requests a trial by a jury of eight (8) persons.

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman (0085586)